(Court of Appeal, Parish of Orleans.)

# ILLINOIS CENTRAL RAILROAD COMPANY AND THE YAZOO AND MISSISSIPPI VALLEY RAILROAD COMPANY vs. B. GAIRARD FILS AND THE COMPTOIR NATIONALE D'ESCOMPTE DE PARIS.

Appeal from Civil District Court, Division "D."

Gustave Leinle, for Plaintiff and Appellee.

Dart and Kernan, for Defendant and Appellant.

1. It is within the scope of the authority and powers of the Railroad Commission of the State of Louisiana, to adopt and promulgate rules and regulations providing penalties for detention of freight cars having for their purpose the orderly and expeditious conduct of freight traffic and other business of railroads operating in this State.

2. In the absence of a specific anterior contract relieving the shipper of the lawful charges imposed by the Railroad Commission, said charges are held to be recoverable.

ESTOPINAL, J. Plaintiffs, who are common carriers, transported at various times during the year 1900, a number of cars of Staves to New Orleans, consigned to John F. Lafont, for his principal, Gairard Fils, of Marsailles, France, and allege that the defendant is indebted to them in the sum of One Thousand and Sixty-nine Dollars ($1069.00), for car service or demurrage.

This action is brought upon a bond signed by defendant, B. Gairard Fils and the Comptoire Nationale D'escompte de Paris, to cover the amount of demurrage alleged to have been incurred by the defendant, the bond being furnished by reason of the fact that at the moment that the demurrage was insisted upon, a vessel was lying at the dock ready to take on the staves, and it was agreed that a bond should be substituted for the staves in order that the parties might be able to test their rights legally to the

same effect as if the staves were in possession of the plaintiff, the Comptoir Nationale D'escompte de Paris, is made party as surety on this bond.

Plaintiffs abandoned a part of their claim and judgment was rendered below for the sum of Nine Hundred and Seventeen Dollars ($917.00), with interest and costs.

From this judgment defendants appealed, urging various grounds for reversal.

Defendant avers that he was never advised that his property was, or would be subject to demurrage charges, and that in the absence of a specific contract permitting said charges, none could be made.

That the respondents' property was not subject to such demands, and that plaintiff companies had no legal right to retain or withhold it after demand made for its delivery.

That the Railroad Commission of Louisiana had not then adopted any rules or regulations governing or controlling the issues herein raised between plaintiffs and respondent.

That if it should be found that the rule of the Railroad Commission relied upon by plaintiff was in force, that the same is unjust, inequitable, descriminative, etc.

It appears that the Railroad Commission of Louisiana, a creature of the Constitution of 1898, adopted a number of regulations for the purpose of preventing the unnecessary detention of freight car equipment, and thereby keep the same in the legitimate service of transportation, clearly a right which the Commission may exercise as being within the powers delegated to it.

These rules of the Commission became effective on August 2nd, 1900, and Section 7 of Rule 3, contains this provision:

"On all cars containing export freight, ten days free of charge will be allowed."

Section 1, of Rule 4, provides that:

"At the expiration of the free time allowed, a charge of One

194

Dollar per day, or fraction thereof, shall be made and collected upon all cars subjected to car-service charges."

The above cited rules, as well as others on the same subject matter, adopted by the Railroad Commission were addressed to the Louisiana Car-Service Association, and they were ordered put in effect by said Association.

This, the Association, which stands for and means all the railroads entering in New Orleans, proceeded to do.

Prior to the adoption of the rule in question, in August, 1900, the rules in force relative to car-service in connection with export freight provided that when the cars reached New Orleans, if the name of the vessel by which the freight was to be exported was given ten days after the arrival of the cars, the exporter was not called upon to pay any demurrage or car-service, no matter how long thereafter it would be before the vessel arrived.

Respondent, together with other exporters, is shown to have conducted his export trade under this old rule adopted by the transportation officials of each railroad company, who then composed what was known as the Executive Committee of the Car-Service Association.

When, however, the car service rule adopted in August, 1900, by the Louisiana Railroad Commission, permitting free use of cars for ten days and demurrage charges of One Dollar ($1.00), per car, per day after expiration of ten days was attempted to be enforced, the record shows that a loud protest went up from the exporters at this port, and that in consequence the rule was suspended altogether until the 19th day of September, 1900.

The complaint on the part of the exporters against the enforcement of the car service rules in August, was placed on the ground that they had not been given sufficient time and notice of the operation and application of the rules, but the testimony shows that Mr. Lafont, defendant's agent in New Orleans, took an active part in the conference with the railroad officials, which finally

culminated in the suspension of the rules until September 19th, 1900, which fact necessarily destroys the defense made, of want of proper notice of the enforcement of the rule after September 19th.

The demurrage of car service is charged for the period between the 19th of September and the 1st day of November.

As to certain material facts and agreements, there can be no question in the face of the subjoined admission, to-wit:

1st. It is admitted that plaintiffs are common carriers, engaged in the operation of steam railroads, and in the transportation of freight and passengers, between points in the State of Louisiana, and from points in the State of Louisiana, to points in other States, and from points in other States to points in the State of Louisiana.

2nd. It is admitted that the cars described in the four lists, marked, respectively, P. 1, P. 2, P. 3 and P. 4, are the cars on which the demurrage, or car service, is claimed in the present case.

3rd. It is admitted that, should the Court find that any demurrage, or car service, whatever, is due to the plaintiffs for the detention of cars described in the above mentioned list, then that the defendants are responsible therefor, and judgment shall be rendered against them for such amount as the Court may find to be due.

4th. It is admitted that the lists aforesaid correctly described the numbers of the cars, the initials of the same, the time of their arrival, the time the consignees were notified, the time the consignees ordered the cars placed, and the time the cars were released.

5th. It is admitted that if the Court should find that any demurrage, or car service, is due to the plaintiffs, under the circumstances which may be developed in the case, then it is admitted that the amount of the demurrage, as figured out by the plain-

196

tiffs in the said lists, is correctly figured, except as to the eighteen cars indicated by red crosses on the list aforesaid, and as to which cars the plaintiff abandoned all claims for demurrage.

The only question for this Court to determine is, whether the rule adopted by the Car Service Association, in August, 1900, which date was extended by agreement to September 19th, 1900, shall govern in determining car service or demurrage due by defendants, or whether the old rule shall prevail.

There is nothing in the record to show that other exporters were exempted from the rules of 1900, and Lafont's contention that he should not be governed by the same rule that the other exporters were, because of the existence of a contract between the railroad company and himself and principals, relative to demurrage charges, is not tenable.

A letter written by Lafont to one of the plaintiffs' agents is the document relied upon to establish specific contract relations.

This letter simply instructs the agent at New Orleans, as to what ships he should make delivery of defendants' staves, and contain no conditions or elements going to make up a contract between the railroad company and Mr. Lafont, relative to freight rates or car service to be charged.

We are of opinion that not only has the railroad company and the Louisiana Car Service Association, a right to adopt rules regulating the use of freight cars, but that rules of that character are absolutely essential for insuring proper and expeditious disposition of freights by preventing the unreasonable detention and congesting of such cars, and that the rules adopted here are not unjust or discriminating.

We quite agree with the learned counsel for defendants that if there was shown to exist a contract, anterior to the adoption of the car service rule, to be operative throughout the stave season of 1900, said rules would be inoperative as to defendants, but we

197

cannot agree with him that the subjoined letter discloses such a contract as would exempt defendants from the operation of any rules, fixing charges for car service or any other reasonable and lawful rules that they might deem necessary. In the next place the letter is not even addressed to an official of the railroad company shown to have the authority to enter into a contract of this nature, and plaintiff denies that the person addressed has any authority in the premises.

The letter in question reads:

"New Orleans, July 24, 1900.

"*Mr. C. T. Scaife, Gl., I. C. R. R. Co., City*:

"DEAR SIR:

"Please take notice that all car loads of claret staves shipped or in course of shipment to my address from Shreveport, La., or all Mississippi points, through either the I. C. or Y. & M. V. R. R.. by

"1.  Sutherland Innes Co.

"2.  M. Vuk & Sons,

"3.  Leopold Kern,

"4.  Max Levy,

"5.  Austro American Stave and Lumber Co.,

are intended, with all other stock of mine laying at Stuyvesant docks (7 cars), and Southport (68 cars) to the Steamship 'Valentia' for Bordeaux.

"That steamship is due in New Orleans by the 26th or 28th inst.; she will take about 275 car loads of staves, all at your terminals.

"The steamship 'Soluble' will follow, for same port on or about August 15th, and the steamship 'Woodleigh' on about September 1st, all loading at your terminals.

"Yours truly,

(Signed)                                    "J. F. LAFONT."

This letter appears to us to be perfectly plain and explicit, and

is nothing more than a note of instructions to the terminal agent, advising him as to the disposition to be made of defendant's property.

Our attention is directed to a decision in 158 U. S., p. 98, Railroad Company vs. Heffley, when the court held that even though the rate was fixed in the bill of lading, and said rate was less than the tariff rate posted by the Railroad Company, under the Interstate Commerce Act, the Railroad Company was entitled to claim and recover under printed tariff in accordance with the Interstate Commerce Act. The case at bar is measurably stronger since plaintiffs asks no more than the rates fixed by the Railroad Commission.

The right of common carriers to charge storage or demurrage for detention of their cars by consignees over the time allowed, is too well settled to need discussion here.

We find no error in the judgment rendered below, and it is hereby affirmed, defendants to pay costs in both courts.